**CALVERT INVESTMENTS, INC.,**
**Plaintiff–Appellant,**

v.

**LOUISVILLE AND JEFFERSON COUNTY METROPOLITAN SEWER DISTRICT, et al., Defendants–Appellees.**

**No. 87–5275.**

United States Court of Appeals,
Sixth Circuit.

Argued Feb. 2, 1988.
Decided May 24, 1988.

John G. Heyburn II (argued), Morris B. Borowitz, Louisville, Ky., for plaintiff-appellant.

Laurence Zielke (argued), Michael Lowe, Louisville, Ky., Dennis J. Conniff, Office of Gen. Counsel, Frankfort, Ky., for defendants-appellees.

Before LIVELY, JONES, and MILBURN, Circuit Judges.

LIVELY, Circuit Judge.

Calvert Investments, Inc. (Calvert) appeals from summary judgment for the defendants in this action under 42 U.S.C. § 1983. In its complaint Calvert charged that Louisville and Jefferson County Metropolitan Sewer District and its board members, the individual defendants-appellees, (hereafter collectively referred to as MSD) were threatening to effect an unconstitutional taking of Calvert's property by exercising a statutory right to collect and treat sewage from an area served by Calvert. The complaint asserted claims under the Fifth and Fourteenth Amendments to the Constitution of the United States, and pendent claims under the Constitution of Kentucky, Kentucky statutes and common law. Calvert sought an injunction and damages.

Following an evidentiary hearing and oral arguments, the district court denied Calvert's motion for a preliminary injunction. Thereafter, the district court granted MSD's motion for summary judgment and dismissed Calvert's federal claims with prejudice. The pendent state claims were dismissed without prejudice "consistent with judicial economy and the ability of the state courts to properly handle said claims...." Calvert appeals, and we affirm the judgment of the district court.

## I.

Jefferson County is Kentucky's principal metropolitan area. It includes Louisville, the State's largest city, unincorporated areas, and many neighborhoods incorporated as small cities of the fifth and sixth classes. MSD was created in 1946 pursuant to a Kentucky statute authorizing the creation and establishment of a joint metropolitan sewer district "in and around each city of the first and second classes and in each county containing such city." Kentucky Revised Statutes (KRS) 76.010. In 1946 Louisville was the only city of the first class in Kentucky.

Chapter 76 of KRS was enacted "[i]n the interest of the public health and for the purpose of providing adequate sewer and drainage facilities...." KRS 76.010. The statute gives metropolitan sewer districts broad powers, including the power of eminent domain. KRS 76.080(6). No other private or public sewer system may be constructed within a metropolitan sewer district without approval of the district board. KRS 76.080(12) and 76.085.

## II.

### A.

Calvert purchased a private sewer system serving Minor Lane Heights, a Jefferson County city of the fifth class, in 1967. The system consists of lateral lines from each residence or building served, main lines which collect the sewage from the laterals and move it to a treatment plant, and the treatment plant itself. The laterals are partly under the individual privately owned lots which they serve, and partly under dedicated streets where they connect with the mains. The mains are entirely within the easements for streets, and the treatment plant is on land owned by Calvert, adjacent to one of the streets. The twenty-one inch main that leads to the treatment plant is wholly within a 60–foot street and sewer easement adjacent to the plant. Prior to Calvert's ownership, its predecessor transferred to the City of Minor Lane Heights this 60–foot street with its sewer easement. The district court found that the purpose of this transfer was to make sure that the individual property owners would have access to and use of the twenty-one inch main.

In 1983 Calvert had 606 customers connected to the sewer system. In October 1983 Calvert entered into a contract for sale of the sewage system to the City of Minor Lane Heights. However, before the transaction was completed, the city learned that MSD had determined to extend its service to the area and would soon be able to take the Minor Lane Heights sewage for treatment. Under circumstances not revealed by this record, the city concluded its relationship with Calvert without purchasing the sewage system. Instead, it granted MSD the right to tap into the twenty-one inch main and divert the sewage to its own treatment facilities. Calvert claims that the act of intercepting the sewage by tapping into the main constituted an unconstitutional taking of its property.

### B.

The district court, applying Kentucky law, determined that MSD took no property of Calvert, and denied relief. The court held that Calvert owns the treatment plant and "bare legal title" to the mains, subject to the individual lot owners' easement for free and unrestricted use of the mains. MSD did not physically occupy the treatment plant or the land on which it is situated, and did not physically appropriate the mains. The lot owners had the right, acting through the city, to permit MSD to replace Calvert as the provider of sewer services. The district court found that Calvert had no reasonable expectation of an indefinite right to serve Minor Lane Heights because Calvert had no franchise or contract to serve the city, and it was known when Calvert purchased the system that MSD could, with consent of the customers, replace Calvert by bypassing its treatment plant. The district court pointed out that the developers included the cost of the sewer system in the price of the lots, and recovered their investment as the lots were sold. Calvert purchased a treatment plant and collection system in 1967, which

it still owns, and took the risk that it might lose its customers at some future time and be left "holding the bag."

### III.

█ The Fifth Amendment provides that private property shall not be taken for public use without just compensation. This limitation applies to the states by operation of the Fourteenth Amendment. However, the Constitution does not create property rights. Such rights "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). The *Roth* approach to identifying and defining property rights applies in Taking Clause cases. *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1001, 104 S.Ct. 2862, 2871, 81 L.Ed.2d 815 (1984); *Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155, 161, 101 S.Ct. 446, 450, 66 L.Ed.2d 358 (1980). However, "a mere unilateral expectation ... is not a property interest entitled to protection." *Id.* Thus we look to state law to determine whether MSD "took" any property interest from Calvert when it intercepted the Minor Lane Heights sewage.

Three Kentucky decisions settle the issue. In *Lee v. City of Park Hills*, 295 Ky. 383, 174 S.W.2d 539 (1943), the developers of a subdivision installed a water system. The area was incorporated later as the City of Park Hills, and the developers leased the water system to the city. When a dispute arose between the city and the developers over water rates, the city leased the system to the Kenton County Water Commission. The city brought a declaratory judgment action to determine the ownership of the water mains and whether the developers had the right to collect from the residents for delivering water through the mains. The mains were laid under dedicated streets and alleys.

The Kentucky court held that the developers did not lose title to the water mains. The court also held, however, that the water mains were appurtenant to the lots conveyed to the purchasers. Thus, while the developers retained legal title to the water system, the system was subject to use without charge or interference by all property owners in the subdivision. Further, the court held that the property owners, acting through the city, had the right to make a contract with a third party to supply water through the mains.

Similarly, in *Kreamer v. Harmon*, 336 S.W.2d 561 (Ky.1960), a dispute arose between the developers of a subdivision and lot owners over ownership of water mains in the subdivision. The developers laid the mains in dedicated streets in an unincorporated area and connected them to the water system of a nearby city. When the city decided to annex the subdivision and purchase the water system, the lot owners claimed the proceeds. The Kentucky court held that the existence of the mains at the time of the lot sales made them an "appurtenant right passing with each lot." *Id.* at 563. However, the water mains remained the property of the developers and they were entitled to the proceeds of the sale.

Applying the holdings in *Lee* and *Kreamer* to the present case leads to the conclusion that Calvert has legal title to the sewer mains in Minor Lane Heights, subject to the right of the individual lot owners to the free and unrestricted use of the mains for passage of sewage reaching the mains through the laterals. This right of free usage gives the lot owners the right, acting through the City of Minor Lane Heights, to agree that the sewage will be delivered through the mains to MSD, rather than to Calvert.

The Kentucky Supreme Court has now decided a case similar in many respects to the present one. In *Louisville and Jefferson County Metropolitan Sewer District v. Douglass Hills Sanitation Facility*, 592 S.W.2d 142 (Ky.1979), MSD filed a declaratory judgment action to determine "whether, how, and under what conditions [MSD] or some other governmental agency may require a sewer system that presently drains into a sewage-disposal plant owned by [a private operator] to be connected instead to MSD's comprehensive sewer and sewage-disposal system." *Id.* at 144. The

developers of a subdivision provided a sewer system with collection mains laid in a retained easement under the streets and a treatment plant on nearby land. After development was completed the area was incorporated as the sixth class city of Douglass Hills. This action was commenced after MSD extended service to the area and sought to gain control of the trunk line adjacent to the treatment plant in order to divert the sewage, before treatment, to MSD's facilities.

The court held that KRS 76.170 prescribes MSD's method of expansion. This procedure permits property owners within a city to be brought into the MSD system by written agreement with their municipality. The court also held that although the developers of Douglass Hills retained "bare legal title" to the collection system, it was burdened with such an encompassing easement that the corporeal title was "relatively insignificant." *Id.* at 149. A new supplier of sewer services was not required to buy the sewer system; rather, it "could serve the lot-owners in the [city] without regard to the ownership of the water mains, which had been expressly retained by the developers." *Id.* at 150. Continuing to apply Kentucky property law as enunciated in *Lee v. City of Park Hills,* the court stated:

> Exactly the same circumstance prevails here. Should the City of Douglass Hills choose to contract with MSD and leave the Sanitation Company holding the bag, as the City of Park Hills did with respect to Messrs. Lee and Simmons, the developers of that community, the *Lee* case provides an indubitable precedent for its right to do so. There is no contractual relationship whatever that binds the city or the lot-owners to continue using the services of the Sanitation Company. The Sanitation Company has no more "franchise" or exclusive right to its customers than would any other seller of services to the public. The construction of a sewage-disposal plant in reliance upon future customers is no more immune from the laws of supply and demand than is any

other capital investment under the free-enterprise system.

*Id.*

### IV.

### A.

■ The property interest of Calvert in the sewer mains, as defined by Kentucky law, was not "taken" by MSD's connection with the twenty-one inch main. Calvert has precisely the same property interest it had before MSD acted—bare legal title to the pipes. What it lost was the continuing privilege of treating the sewage at its plant and the accompanying right to charge the lot owners for this service. However, lacking a franchise from the city or any contract for continuing this service, Calvert had nothing more than a "desire" or "a unilateral expectation" that it would continue. *Roth,* 408 U.S. at 577, 92 S.Ct. at 2709.

Calvert argues that its bare legal title was subjected to a taking when MSD tapped into the twenty-one inch main. This overlooks the fact that Calvert's predecessor specifically conveyed the 60–foot street containing the twenty-one inch main to the City of Minor Lane Heights to ensure future sewer service for the lot owners in the subdivision. MSD may have committed a trespass against Calvert's property when it tapped into the main, but this act did not deprive Calvert of any property interest in the mains for Fifth Amendment purposes. Rather than physically appropriating the mains, MSD simply deprived Calvert of the privilege of continuing to treat the lot owners' sewage for a profit. Since, as we have held, this hope or expectation was not a protected property interest under Kentucky law, there was no taking of property.

Calvert maintains that *Loretto v. Teleprompter Manhattan CATV Corp.,* 458 U.S. 419, 102 S.Ct. 3164, 73 L.Ed.2d 868 (1982), is to the contrary. We disagree. That case involved a property owner's claim that the attachment of cables and boxes to the roof of her apartment building to serve the building's tenants pursuant to a New York law giving this privilege to cable TV operators constituted a taking. In upholding this claim the Court, in what

it described as a "very narrow" holding, affirmed and applied "the traditional rule that a permanent physical occupation of property is a taking." *Id.* at 441, 102 S.Ct. at 3179. Immediately after stating its holding, the Court added, "[w]e do not, however, question the equally substantial authority upholding a State's broad power to impose appropriate restrictions upon an owner's *use* of his property." *Id.* The Court also specifically stated that the cable installation on the plaintiff's roof was not an appurtenance to the tenants' leasehold interests. *Id.* at 439, 102 S.Ct. at 3178. This fact alone distinguishes the present case. Here, the right to use the mains for sewage disposal is an appurtenance to the various lots in the City of Minor Lane Heights and a burden on Calvert's bare legal title. Because of this legal incidence Calvert had no right to interfere with the lot owners' use of the mains. By way of contrast, the tenants in the Loretto apartment building had no property right under New York law to free and unrestricted use of the roof and thus the installations on the roof did constitute a taking of the owner's property.

Since Calvert had no right to use the mains contrary to the lot owners' desires, and the MSD tap was made to comply with those desires, Calvert lost no property interest by reason of the tap. It still owned and possessed the entire property interest it had in the sewer system before MSD tapped the main—bare legal title to the pipes and the right to sell the system to anyone willing to buy it. *Douglass Hills,* 592 S.W.2d at 149–50. MSD exercised the right to collect and treat sewage in areas formerly served by privately owned systems "[i]n the interest of the public health and for the purpose of providing adequate sewer ... facilities." KRS 76.010. This served a valid state interest and did not deprive Calvert of any property interest.

### B.

■ Calvert also argues that MSD's taking of the collection system affected the value of the treatment plant since they operated as a single unit. Having found that the collection system was not taken, we have little difficulty with this argument. The collection system was subject to an overriding use easement in favor of the lot owners. The treatment plant belonged to Calvert and was subject to no burden in favor of others. MSD did not physically occupy the treatment plant or the land on which it was situated. Calvert is free to sell the land, dismantle the plant, or dispose of it in any way it finds feasible. All that Calvert has lost is the privilege of indefinitely using the treatment plant to process sewage from the buildings in Minor Lane Heights. Since Calvert had no right to continue this service, but only a hope or unilateral expectation, it has not been deprived of a property interest in the treatment plant.

### C.

■ Calvert also asserts that MSD's action constitutes a "regulatory taking" for which it is entitled to compensation. Again, we disagree. In *Pennsylvania Coal Co. v. Mahon,* 260 U.S. 393, 415, 43 S.Ct. 158, 160, 67 L.Ed. 322 (1922), the Court stated the "general rule ... that while property may be regulated to a certain extent, if regulation goes too far it will be recognized as a taking." The regulatory taking concept has several clear limitations. For one, even if a challenged government action may cause economic harm, there is no taking if the action does "not interfere with interests that [are] sufficiently bound up with the reasonable expectations of the claimant to constitute 'property' for Fifth Amendment purposes." *Penn Central Transportation Co. v. City of New York,* 438 U.S. 104, 124–25, 98 S.Ct. 2646, 2659–60, 57 L.Ed.2d 631 (1978). As the Kentucky cases make clear, Calvert had no reasonable expectation of continuing indefinitely to sell sewer services to the residents of Minor Lane Heights. A second limitation is that the mere diminution in value of property, standing alone, is not sufficient to constitute a taking. *Id.* at 131, 98 S.Ct. at 2662. Finally, restrictions on the use of private property, particularly by zoning regulations, have been upheld where their purpose was to promote public health and similar interests. *Id.* at 125, 98 S.Ct. at 2659. As we have noted, Kentucky

authorized metropolitan sewer districts with far-reaching authority to control the collection and treatment of sewage in populous areas of Kentucky to promote public health. Individual economic losses from such efforts do not constitute a taking for which just compensation must be made.

If Calvert has suffered injury from a trespass or from alleged tortious interference with its contractual relations with the City of Minor Lane Heights, it has a remedy in state court under the pendent claims that were dismissed without prejudice. MSD's actions did not deprive Calvert of property within the meaning of the Constitution, and it has no federal cause of action under 42 U.S.C. § 1983 for the injuries it claims. See *Ohio Inns, Inc. v. Nye*, 542 F.2d 673, 676 (6th Cir.1976), *cert. denied*, 430 U.S. 946, 97 S.Ct. 1583, 51 L.Ed.2d 794 (1977) ("This case involves yet another effort to make a federal question out of litigation where exclusive jurisdiction is in the State courts.").

The judgment of the district court is affirmed.