UNITED STATES of America, Plaintiff,

v.

CONFEDERATE ACRES SANITARY SEWER AND DRAINAGE SYSTEM, INC. and Louisville and Jefferson County Metropolitan Sewer District, Defendants.

No. C 85–0935–L(B).

United States District Court, W.D. Kentucky, at Louisville.

March 8, 1990.

Anna C. Thode, U.S. Dept. of Justice, Washington, D.C., Richard A. Dennis, Asst. U.S. Atty., Louisville, Ky., for U.S.

Richard L. Masters, Louisville, Ky., for Confederate Acres Sanitary Sewer and Drainage System, Inc.

Larry Zielke, Louisville, Ky., for Louisville and Jefferson County Metropolitan Sewer Dist.

## MEMORANDUM

BALLANTINE, Chief Judge.

The defendant, Confederate Acres Sanitary Sewer and Drainage System, Inc. (Confederate Acres), is a sewage treatment works discharging pollutants into a tributary of Pond Creek, a navigable water of the United States. On May 12, 1988, the motion of the plaintiff, United States of America (U.S.), for partial summary judgment on the issue of Confederate Acres' liability for violations of the Federal Water Pollution Control Act (the Clean Water Act or the Act), as amended, Title 33 U.S.C. § 1251 *et seq.*, was granted. On July 31, 1989, the Louisville and Jefferson County Metropolitan Sewer District (MSD) was joined as a defendant to this action. In the Memorandum Opinion and Order of May 12, 1988, 1988 WL 149362, incorporated herein by reference, the Court held that Confederate Acres violated the Clean Water Act by: 1) failing to file Discharge Monitoring Reports (DMRs) as required by the terms of NPDES permit No. KY0043419 from October 28, 1977 through October 28, 1982, in violation of Title 33 U.S.C. §§ 1311(a) and 1342; 2) operating the treatment works without a permit from October 28, 1977 until the present date in violation of Section 301(a) of the Act, Title 33 U.S.C. §§ 1311, 1341 and 1342; and 3) disobeying Administrative Order 83–361, issued by the Environmental Protection Agency (EPA) on September 20, 1983, in violation of Title 33 U.S.C. § 1319(a).[1]  Con-

---

1. Under the National Pollutant Discharge Elimination System (NPDES), it is unlawful to discharge a pollutant into a navigable waterway without obtaining a permit and complying with its terms. Title 33 U.S.C. §§ 1342 and 1311(a). NPDES permits are secured from the EPA or from a state upon EPA's approval of the State's program. Title 40 C.F.R. Parts 122–125 (1988).

federate Acres reapplied for a permit, but the application was denied on April 17, 1986.[2] This matter has now been submitted to the Court on the motion of the plaintiff for injunctive relief to halt defendant's illegal discharges and assure compliance with the Act and the imposition of civil penalties against Confederate Acres for past and continuing violations of the Act. Title 33 U.S.C. § 1319(b) and (d). Other motions to be addressed are MSD's motions to strike the affidavit of Catherine Gossman, attached as an exhibit to Confederate Acres' response to Plaintiff's motion and for leave to file a reply memorandum to Confederate Acres' response to Plaintiff's motion. Confederate Acres' motions to file supplemental authority and a memorandum pertaining to claimed easements will be granted. Confederate Acres' Reply in opposition to plaintiff's Reply will be stricken pursuant to Local Rule 6(c).

MSD has moved to strike the affidavit of Catherine Gossman, a former Environmental Health Specialist for the Louisville and Jefferson County Board of Health because the affidavit incorporates by reference certain documents purported to be "Articles" and which appear to be copies of newspaper articles. Fed.R.Civ.P. 12(f). MSD has presented evidence that the articles have never been published and "that the structure and organization of the documents was created by a friend, to resemble legitimate articles." MSD argues that the inclusion of these articles reflects negatively on the credibility of Gossman and requires the Court to strike Gossman's entire affidavit. The documents in question relate Gossman's experiences while working for the Board of Health and Gossman's belief that MSD receives favored treatment by the Board of Health's reluctance to cite MSD for violations of effluent standards.

The affidavit was filed for the purpose of rebutting the affidavit of Sarah Lynn Cunningham, submitted by MSD to show numerous safety and effluent violations committed by Confederate Acres.

Confederate Acres contends that the articles were prepared for publication and sent to several media sources in September, 1988, but they were not accepted for publication. The articles are not accompanied by a reference to a particular publication and the fact that they are presented in a format similar to that of a newspaper or news magazine article is insignificant. MSD's motion to strike will be denied.

MSD's motion to file a reply memorandum will be granted.

In 1974, the Commonwealth of Kentucky developed a water quality management plan for the Louisville and Jefferson County area which provided for construction of the West County–Pond Creek Waste Water Treatment System (Pond Creek), part of a comprehensive sewer system owned and operated by MSD, which would eventually serve substantially all of Southwest Jefferson County.[3] The plan provided that when Pond Creek became operational and its associated interceptor network with collector sewers gradually expanded, over two hundred specific point source discharges, including Confederate Acres, would be eliminated and sewage would be accepted and treated by MSD.

Confederate Acres was developed as a corporation in the early 1960's by Loyie Allen, his brother Carlos Allen and their father Lee Allen.[4] In 1975, Carlos and Loyie purchased Lee's stock in Confederate Acres for $50,000. Loyie was the President of Confederate Acres and Carlos was Vice President. There were no other officers. In 1978, Loyie purchased Carlos' shares in the corporation for $75,000. Con-

On September 30, 1983, the Kentucky Department for Environmental Protection was granted authority to administer the NPDES within the State. The Kentucky program is known as the Kentucky Pollutant Discharge Elimination System (KPDES). 401 KAR 5:055 through 5:085.

2. The Administrative Order violated by Confederate Acres required application for a permit within twenty days of the Order, but defendant did not apply until April 28, 1984.

3. MSD received a grant from the EPA for this construction.

4. Confederate Acres owns the sewage treatment plant and 118 acres of land which the Allens' planned to develop as a trailer park. (Allen depo. at p. 5)

struction permits issued by the Commonwealth of Kentucky in 1966 and 1974 to Confederate Acres for expansion of its treatment plant state as a condition of the permit:

> "This treatment unit in no way supercedes the need of a comprehensive sewer system, and if sewers become available this unit must be abandoned and connection made to said system."

The NPDES permit issued to Confederate Acres in 1977 stated:

> "The issuance of this permit does not convey any property rights in either real or personal property, or any exclusive privileges, nor does it authorize ... any infringement of Federal, State or local laws or regulations."

An Operational Permit obtained from the Kentucky Department for Natural Resources and Environmental Protection, effective June 1, 1981 through October 28, 1982 states:

> "This permitted discharge in no way supersedes the need of a comprehensive sewer system, and if sewers become available this discharge must be eliminated and connection made to said system."

## INJUNCTIVE RELIEF

The Clean Water Act authorizes the Administrator of the EPA to seek an injunction to restrain wastewater treatment plants from discharging pollutants into navigable waters of the United States without a permit. Title 33 U.S.C. § 1319(b). See *Weinberger v. Romero–Barcelo*, 456 U.S. 305, 102 S.Ct. 1798, 72 L.Ed.2d 91 (1982). Because Confederate Acres has violated and, due to the denial of a permit, will continue to violate the Act, the United States asks this Court to issue an injunction requiring Confederate Acres to cease its discharges and allow MSD to connect its sewer lines to those of Confederate Acres in order for sewage flow to bypass the Confederate Acres treatment plant and go directly into MSD's collector lines for treatment by MSD's facility. The United States also requests that MSD be ordered, pursuant to the All Writs Act, Title 28 U.S.C. § 1651, to make the connection.

■■■ The All Writs Act provides:

> "The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."

Title 28 U.S.C. § 1651(a). Jurisdiction to authorize an injunction is conferred by the Clean Water Act, Title 33 U.S.C. § 1319(b). Therefore, if an injunction may properly issue against Confederate Acres, the power of this Court to effectuate the injunction may extend to "persons who, though not parties to the original action or engaged in wrongdoing, are in a position to frustrate the implementation of a court order or the proper administration of justice." *United States v. New York Telephone Company*, 434 U.S. 159, 174, 98 S.Ct. 364, 373, 54 L.Ed.2d 376 (1977). *See United States v. Wallace*, 218 F.Supp. 290 (N.D.Ala.1963).

An injunction is an equitable remedy and because defendant's liability has previously been determined, the basis for injunctive relief must be irreparable injury and the absence of an adequate legal remedy. *Weinberger* at 313, 102 S.Ct. at 1803; *United States v. City of Detroit*, 476 F.Supp. 512 (E.D.Mich.1979), *remanded on other grounds*, 720 F.2d 443 (6th Cir.1983). The purpose of an injunction must be to bring discharges of pollutants into "prompt" compliance with the Act. *Weinberger* at 320, 102 S.Ct. at 1807.

The Court cannot order Confederate Acres to apply for a KPDES permit because the State has already denied the defendant's permit application and the issuance of a permit would frustrate the objectives of the Water Quality Management Plan. Title 33 U.S.C. § 1288(e). The plaintiff contends that an injunction is both appropriate and necessary to ensure compliance with the Clean Water Act.

Confederate Acres agrees that it is in violation of the Act and asserts that it would cease operation if ordered by this Court. However, Confederate Acres con-

tends that a condemnation proceeding, rather than an injunction is the appropriate relief and asks the Court to allow it to continue to operate its plant until MSD files a condemnation action. In addition, Confederate Acres argues that connection with Confederate Acres' sewer lines would require MSD to trespass on property owned by Loyie Allen Developers and Builders, Inc., a corporation not a party to this action.[5] Defendant states that "MSD can traverse this property by negotiation in good faith with subsequent sale or condemnation proceedings as it may elect to do." The plaintiff contends, based on evidence submitted by MSD, that MSD has an existing easement to make the connection. Evidence of either parties' position is inconclusive.

KRS 65.115(1) provides:

"The provisions of any other law, rule or regulation notwithstanding, if any city, county, public body corporate or politic or special district or subdistrict, other than an urban county, furnishes, or proposes to furnish, sewage treatment utility services to customers of another sewage treatment utility, then such city, county, public body, district or subdistrict taking over or proposing to take over the customers, shall pay just compensation for such installations prior to the time the customers are taken over. If an agreement for compensation is not reached, then just compensation for the installations shall be payable by said city, county, public body, district or subdistrict after condemnation as provided for in the Eminent Domain Act of Kentucky."

Chapter 76 of KRS gives metropolitan sewer districts the power of eminent domain. KRS 76.080(6). MSD, in the instant case, attempted to negotiate with Confederate Acres for the transfer of wastewater services in 1985, but an agreement was not reached. Neither MSD nor Confederate Acres has attempted to renew negotiations. If Confederate Acres were to shut down its operation before connection by MSD, the residents of subdivisions served by Confed-

erate Acres would be left without sewer service and the untreated sewage would create a health hazard.

" 'The Fifth Amendment provides that private property shall not be taken for public use without just compensation. This limitation applies to the states by operation of the Fourteenth Amendment. However, the Constitution does not create property rights. Such rights "are created and their dimensions are defined by existing rules or understanding that stem from an independent source such as state law.' *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). The *Roth* approach to identifying and defining property rights applies in Taking Clause cases. *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1001, 104 S.Ct. 2862, 2871, 81 L.Ed.2d 815 (1984); *Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155, 161, 101 S.Ct. 446, 450, 66 L.Ed.2d 358 (1980)."

*Calvert Investments, Inc. v. Louisville and Jefferson County Metropolitan Sewer District*, 847 F.2d 304, 307 (6th Cir. 1988).

If the issuance of an injunction by this Court involves the taking of private property by MSD, redress may be sought in the state courts. Kentucky law recognizes an action for inverse condemnation to compensate a property owner for the fair market value of property which has been taken or appropriated by government activities. *Commonwealth, Natural Resources and Environmental Protection Cabinet v. Stearns Coal and Lumber Company*, Ky., 678 S.W.2d 378 (1984), *dismissed for want of a substantial federal question* 473 U.S. 921, 105 S.Ct. 3549, 87 L.Ed.2d 672, *reh'g denied* 473 U.S. 926, 106 S.Ct. 18, 87 L.Ed.2d 696 (1985); *Hammon v. Baldwin*, 866 F.2d 172, 179 (6th Cir.1989). *See* KRS 65.115(1) *supra* p. 838, which provides for compensation after condemnation proceedings in the event an agreement on the amount of compensation is not reached.

To allow Confederate Acres to continue treating sewage until MSD chooses to be-

---

**5.** Loyie Allen is the sole officer and shareholder of Loyie Allen Developers and Builders, Inc.

gin eminent domain proceedings would be to agree to Confederate Acres' continuing violation of federal law in derogation of the purposes of the Clean Water Act. Title 33 U.S.C. § 1251(a). The aim of the Act is "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters." *Id.*

The plaintiff's motion for injunctive relief will be granted. Pursuant to the All Writs Act, MSD will be ordered to accept and treat the sewage flow from residences in Confederate Acres' sewage service area and to construct an intercepting line for this purpose. Title 28 U.S.C. § 1651. In addition, Loyie Allen Developers and Builders, Inc. will be ordered not to interfere with MSD's activities relating to the sewer line connection. *Id.*

## CIVIL PENALTIES

■ "Any person" who violates section 1311 or any permit condition of the Act is subject to a civil penalty not to exceed $10,000 per day for each such violation before February 4, 1987, and not to exceed $25,000 per day for each violation after February 4, 1987. Title 33 U.S.C. § 1319(d), as amended, February 4, 1987.

The Court is required to consider specific factors in determining the appropriate civil penalty to be assessed for violations of the Act.

> "In determining the amount of a civil penalty the court shall consider the seriousness of the violation or violations, the economic benefit (if any) resulting from the violation, any history of such violations, any good-faith efforts to comply with the applicable requirements, the economic impact of the penalty on the violator, and such other matters as justice may require."

*Id.*

The Court finds that Confederate Acres' violations, which number over four thousand and have continued for over twelve years, were serious. Loyie Allen testified that while Confederate Acres' permit was

in effect, he never saw the permit nor did he know what standards the permit imposed on the effluent discharge and as a result he did not file Discharge Monitoring Reports for the entire permit period. (Allen depo. at p. 53) After depriving the E.P.A. of the only means of evaluating the effluent, equitable principles preclude the defendant from arguing that the illegal discharges did not cause irreparable damage to the Northern Ditch, a tributary of Pond Creek. *See Sierra Club v. Simkins Industries, Inc.,* 847 F.2d 1109, 1113 (4th Cir.1988), *cert. denied* 491 U.S. 904, 109 S.Ct. 3185, 105 L.Ed.2d 694 (1989), in which the Court found that as a result of the defendant's reporting violations, "information on any harmful level of pollutants in the area of (the point discharge) during the time period is forever lost to environmental planners and policymakers and those who might undertake to remedy the effects of any pollution."

Confederate Acres benefited from its lack of compliance with the permit conditions and its subsequent operation without a permit. Plaintiff asserts that, based on a "standard cost of $1200 per year for conducting sampling and analyses required under Defendant's NPDES permit," the economic benefit to Confederate Acres of not filing DMR's has been approximately $17,-000.[6] The defendant does not refute plaintiff's figures, but presents evidence that it has been filing DMR's since the second quarter of 1988 and has hired an employee to test the effluent and to prepare and file the reports. The defendant also asserts that it has been prepared to negotiate with MSD since 1985 for MSD's acquisition of defendant's property.

Defendant contends that it should be assessed only a nominal penalty in view of Confederate Acres' low income, its mortgage indebtedness and the cost of operating the sewage treatment plant. The indebtedness of Confederate Acres as of the time it answered plaintiff's interrogatories was 1) a balance of $42,983.28 on a mort-

---

**6.** Plaintiff's totals are based on the EPA "BEN" computer model which takes into account the investment value or interest on the standard cost figure.

gage, dated October 7, 1974, held by First Nationwide, for permanent financing on the treatment plant; 2) a balance of approximately $35,560.70 on an obligation to Loyie Allen for "monies and consideration" previously advanced by Loyie Allen for improvements and maintenance; and 3) an obligation to Russ Gailor & Associates, Inc. in an undisclosed amount. Loyie Allen has not received a wage for managing the treatment facility.

The defendant has demonstrated that a severe economic penalty would be beyond Confederate Acres' capability to pay. Because the defendant's business will come to an end when the injunction takes place, a monetary penalty will have no value as a deterrent against future violations. Confederate Acres will be assessed a penalty of $17,000, the approximate amount of the benefit gained from its violations.