LOUISVILLE AND JEFFERSON COUN-
TY METROPOLITAN SEWER DIS-
TRICT, Appellant,

v.

TARRYTOWNE SANITATION COMPA-
NY; Citizens Fidelity Bank & Trust
Company; and Natural Resources and
Environmental Protection Cabinet,
Commonwealth of Kentucky, Appellees.

No. 89–CA–2389–MR.

Court of Appeals of Kentucky.

April 26, 1991.

Rehearing Denied Aug. 16, 1991.

Discretionary Review Denied by
Supreme Court Dec. 11, 1991.

Laurence J. Zielke, Charles F. Merz, Louisville, for appellant.

Stephanie Hawkins Smith, Louisville, for appellee, Citizens Fidelity.

J. Fox Demoisey, Louisville, for appellee, Tarrytowne Sanitation Co.

Dennis J. Conniff, Brenda Gail Lowe, Frankfort, for appellee, Natural Resources and Environmental Protection Cab.

Before LESTER, C.J., and HOWERTON and STUMBO, JJ.

HOWERTON, Judge.

Louisville and Jefferson County Metropolitan Sewer District (MSD) appeals from a declaratory judgment of the Jefferson Circuit Court holding that MSD will be required to pay just compensation to Tarrytowne Sanitation Company (TSC) for the transfer of its sewer system. MSD alleges that the court erred because TSC was required by its sewer permits to make connection to MSD's comprehensive sewer system without compensation. It also claims that the court erred in ruling that a trust indenture between TSC and Citizens Fidelity Bank & Trust Company terminated upon the enactment of recent amendments to KRS Chapter 278. Finally, MSD argues that the court erred by applying KRS 65.-115 to this case and that in the event the statute is applicable, MSD is required only to pay compensation for bare legal title. Although we might not have concurred in everything contained in the declaratory judgment of the Jefferson Circuit Court entered October 12, 1989, we nevertheless find no reversible error on the basis of the allegations in MSD's brief. We affirm.

In August 1965, TSC applied for a permit to the Kentucky Water Pollution Control Commission to construct sanitary sewers

and a sewage treatment plant for a subdivision that was being developed in Jefferson County. The permit was issued subject to all of the terms and conditions contained in it, and it required TSC to fully comply with all federal and state laws and rules and regulations relating to the abatement, prevention, or control of water pollution. Additional permits for extensions to the collection system were subsequently issued. In 1971, a second construction permit was issued which required TSC to abandon its collection and treatment system, if and when a comprehensive sewer system became available to that area of the county. The requirement was not protested, and TSC did not request a hearing or ruling on that concession.

On January 11, 1982, the United States Environmental Protection Agency (EPA) issued a discharge permit to TSC which was valid until February 1987. That permit required connection to a comprehensive sewer system if the system could treat the effluent in a more cost-effective manner and serve the area of TSC's facility.

In September 1983, the EPA delegated its authority to administer Kentucky pollution discharge systems to the Kentucky Natural Resources and Environmental Protection Cabinet (Cabinet). The Cabinet accepted that delegation pursuant to KRS 224.034. In accordance with a water quality management plan, discharges into Pond Creek in Jefferson County were to be phased out. TSC's sewage treatment plant was inconsistent with the Water Quality Management Plan for Jefferson County.

By 1985, MSD had extended its collection system to the area of TSC, and it has been determined by the Cabinet, the Franklin Circuit Court, and now the Jefferson Circuit Court that MSD is capable of treating the effluent discharged by TSC in a more cost-efficient manner and that the MSD sewage collection system has reached the boundary of the TSC facility. The Cabinet has denied TSC's application for a renewal of its discharge permit, which expired in 1987, and its system must now be merged with the MSD system.

The trial court held, and we agree, that TSC must cease its sewage treatment process and that MSD may acquire the sewer collection system, but that MSD must pay just compensation to TSC. Sections 13 and 242 of the Kentucky Constitution prohibit the taking of private property for public use without just compensation to the owner. The Jefferson Circuit Court also determined that KRS 65.115, which became effective July 15, 1986, requires compensation and provides for a taking through the eminent domain procedures in Kentucky. KRS 65.115 provides in pertinent part as follows:

(1) The provisions of any other law ... notwithstanding, if any ... special district ... furnishes, or proposes to furnish, sewage treatment utility services to customers of another sewage treatment utility by means of all or any part of the installations owned or paid for by such other sewage treatment utility, then such ... district ... taking over or proposing to take over the customers, shall pay just compensation for such installations prior to the time the customers are taken over.

We believe the legislature anticipated the problems presented in this case, and it determined that despite anything to the contrary, MSD would have to pay "just compensation" for whatever it actually takes.

The big question is, what is being taken? This will generally be determined by the circumstances in each particular case. There are several relevant questions. Is the acquisition merely the dedicated public easements containing sewer lines which have been fully paid for by the abutting and using property owners? Is the acquisition an established utility and profitable business? Or, is it something in between? Who owns the easements, if anyone? Who will provide the access to the existing easements, if access is necessary? We do not have all of the answers or even all of the questions.

In this case, however, the Jefferson Circuit Court held that TSC, and not Citizens as trustee, had all of whatever rights and entitlements there might be. It also held that MSD must pay fair market value for

any easement across TSC property, if necessary, for connecting to the existing sewer lines. It further held that MSD need not pay for the treatment plant, nor for the taking of TSC customers. The court held that, pursuant to KRS 65.115, MSD must pay for "all or any part of the installation" that it takes, and in this case, that will be the sewer lines. What value TSC has in the actual sewer lines is yet to be determined in the eminent domain proceedings, if the parties remain unable to agree on just compensation.

TSC neither appealed nor cross-appealed from the decision. MSD did appeal, and it argues that it should not have to pay any compensation, or at worst, it should pay only for "bare legal title." As to these points, we agree with Judge Revell and affirm.

While we agree with MSD that TSC must allow connection to MSD's comprehensive sewer system, we disagree that it must be without compensation. MSD attempts to argue that KRS 65.115 is inapplicable because MSD is not exercising its eminent domain powers. At this point, however, TSC continues to operate, and while it must allow connection to MSD, it does not intend to provide for the connection until MSD complies with the statute. If MSD proceeds to take, it must pay. Although just compensation may be a nominal amount in some cases, the amount for this situation is yet to be determined in the eminent domain proceeding.

KRS 65.115 specifically applies to special districts such as MSD, and it requires compensation to be paid prior to TSC being compelled to connect its lines to the MSD system. The fact that TSC no longer has a valid permit to operate a sewage treatment plant and its permits required it to cease operations when a facility such as that operated by MSD became available, does not mean that it is totally ineligible for any compensation when the actual takeover occurs. Whatever fair market value MSD is ultimately required to pay for acquiring this system, MSD may recover the amount through a surcharge on the customers in Tarrytowne Subdivision. KRS 65.115(3).

As the statute was enacted subsequent to the decision in *Louisville and Jefferson County Metropolitan Sewer District v. Douglass Hills Sanitation Facility*, Ky., 592 S.W.2d 142 (1979), we find no particular relevance of that decision to this case. The *Douglass Hills* decision indicated in part that a sewer system need not be taken when the permitee had no choice but to accept the terms and conditions for discontinuance as stated in its permits. We may assume that the legislature was aware of this decision and the constitutional provisions when it enacted KRS 65.115.

MSD also argues that the trial court erred when it concluded that TSC did not anticipate MSD using the sewer lines without paying TSC for them. We find no merit in this argument or error by the trial court. Even if TSC somehow knew that MSD would eventually use its sewer lines, it does not necessarily follow that it had no thought of recovering any unrecovered value it might have in the system. What value, if any, it has in the system remains to be determined by facts and argument presented to a jury.

■ Finally, MSD claims that the trial court erred in ruling that the trust indenture between TSC and Citizens Fidelity was terminated upon enactment of amendments to KRS Chapter 278. The trust was created in 1965 in order to provide a guaranteed backup for the operation of the sewer system, in the event TSC became insolvent. The indenture was necessary to obtain guaranteed financing for properties being sold and developed in the subdivision. The trust was to remain in effect until a public utility assumed responsibility for providing sewage treatment. If that occurred, the trustee was required to reconvey the property to the grantor, its successors, or assigns, and the trust would terminate and be of no further effect.

The Jefferson Circuit Court ruled that amendments to KRS 278.010, which allowed the Public Service Commission to regulate private sewage treatment plants, made TSC a public utility. On that basis, the court ruled that the trust had terminated.

Although we are not totally convinced that the trial court was correct in that ruling, we are likewise not convinced by the arguments made by MSD. Furthermore, we fail to see where this argument has any significance on the question of whether MSD must pay just compensation for a taking. We affirm the trial court on this issue, which will require MSD to pay any compensation directly to TSC, whether it has legal title, equitable title, or both. Although the termination of the trust shall be the law of this case, it might nevertheless be advisable to correct the records of title by obtaining a reconveyance or quitclaim from the trustee or by adding the trustee as an additional party for such purposes in the eminent domain proceedings.

For all of the foregoing reasons, the declaratory judgment of the Jefferson Circuit Court is affirmed.

All concur.