MONTICELLO CO., INC.; South
Elkhorn Service Co.,
Appellants,

v.

COMMONWEALTH Of Kentucky, NATU-
RAL RESOURCES AND ENVIRON-
MENTAL PROTECTION CABINET;
Lexington–Fayette Urban County Gov-
ernment, Appellees,

and

LEXINGTON–FAYETTE URBAN
COUNTY GOVERNMENT,
Cross–Appellant,

v.

MONTICELLO COMPANY; South
Elkhorn Service Co., Cross–
Appellees.

Nos. 91–CA–002250–MR,
91–CA–002424–MR.

Court of Appeals of Kentucky.

Feb. 19, 1993.

Rehearing Denied and Ordered
Published May 21, 1993.

Discretionary Review Denied by Supreme
Court Dec. 15, 1993.

Sidney R. Marshall, Jr., Julius Rather, Lexington, for appellants/cross-appellees, Monticello Co., Inc. and South Elkhorn Service Co.

Charles W. Kurtz, Brenda Gail Lowe, Frankfort, for appellee/cross-appellant, Commonwealth of Kentucky, Natural Resources and Environmental Protection Cabinet.

Edward W. Gardner, Terry Sellars, Wayne Waddell, Lexington, for appellee/cross-appellant, Lexington–Fayette Urban County Government.

Before LESTER, C.J., and SCHRODER and STUMBO, JJ.

SCHRODER, Judge:

This is an appeal and cross-appeal from a judgment ordering two private sewage treatment systems to connect onto the comprehensive sewer system of the Lexington–Fayette Urban County Government (LFUCG), ordering LFUCG to pay for the expense of the connection, and finding that the connection onto the comprehensive system did not constitute a taking for which just compensation must be paid. Appellants do not appeal the order requiring connection, but do appeal the finding that it did not constitute a taking. Cross-appellant/appellee appeals from that portion of the order requiring it to pay the costs of the connection. Upon reviewing the facts and law applicable to the case, we affirm on the appeal and on the cross-appeal.

Appellants, Monticello Company and the South Elkhorn Service Company ("the Companies") are two privately owned sewage treatment facilities located in Fayette County. The Companies entered into operating agreements with the developers of the subdivisions they served in which the developers paid all costs relating to construction of sewer lines within the subdivision and "tap fees" or "contribution in aid of construction". Ultimately, the developers passed on the costs of the tap fees and construction of sewer lines to the various lot owners.

Appellants received discharge permits from appellee, the Kentucky Natural Resources and Environmental Protection Cabinet ("the State") in the mid 1960's which allowed them to operate. In the 1970's, the Federal Water Pollution Control Act was amended to establish a planning process for area-wide waste treatment management. The Act also established a concomitant grant

program for the construction of comprehensive waste treatment systems. In 1976, the Lexington–Fayette Urban County Government ("LFUCG"), appellee/cross-appellant herein, applied for grants to construct such a system in Fayette County. As a condition prerequisite to receiving such grants, LFUCG was required to and did submit a "201 Facilities Plan for Waste Water Treatment Works." The 201 Plan mandated the acquisition of all private sewage treatment systems in Fayette County providing specifically:

It will be the responsibility of the Grantee to effect the phase out of these privately owned facilities.

LFUCG's 201 Plan was approved in 1980, and LFUCG received the grant monies to construct its comprehensive sewer system.

Due to the eventual construction of a comprehensive sewer system, when the Companies applied for their permits in 1979 and 1980, the permits contained the following new language:

This permitted discharge in no way supersedes the need of a comprehensive sewer system, and if sewers become available, this discharge must be eliminated and connection made to such system.

On May 30, 1985, the State wrote the Companies, advising them that when their permits expired in 1984 and 1985, they would not be renewed because of the requirement that they connect to a comprehensive sewer system. However, the State did allow the reapplication to extend the existing permit until the comprehensive system became available through LFUCG.

On June 23, 1989, the State wrote the Companies and LFUCG to inform them that the connection onto the comprehensive system was now available. The letter to LFUCG stated that LFUCG must:

1. Accept the flow from the South Elkhorn and Monticello Sewage Treatment Plants by connection to the South Elkhorn Main Trunk Line; and

2. Implement the provisions of the Uniform Relocation and Real Property Acquisition Act of 1970 so as to acquire such property as may be necessary to make this connection.

If LFUCG did not connect onto the Companies' lines, the State threatened to file suit to compel the connection and to enforce the terms of the grant.

On September 1, 1989, the State filed suit against the Companies to prohibit further discharge of sewage and to force connection of their system to the comprehensive system of LFUCG. LFUCG was joined as a third-party defendant against whom the Companies cross-claimed, requesting that LFUCG be responsible for the connection and that they pay just compensation for the taking of their property.

A third-party complaint was also filed by the Companies against the United States Environmental Protection Agency ("EPA"), alleging that the grants from the EPA to LFUCG required LFUCG to purchase the Companies' sewer systems as a condition of the grants. The action was removed to the United States District Court, where the claim against the EPA was later dismissed and the pendent state claims were remanded to the Franklin Circuit Court.

Upon remand, the Franklin Circuit Court entered a Permanent Injunction on July 19, 1990, requiring the Companies to connect their systems onto the comprehensive system of LFUCG. The injunction directed LFUCG to take all action necessary to effect the connection, but reserved the question as to who should pay the cost of the connection for a later hearing. On October 2, 1990, the Companies' sewer systems were connected to LFUCG's comprehensive sewer system.

By agreement of the parties, venue for this action was subsequently changed to the Fayette Circuit Court where all parties filed motions for summary judgment. On September 16, 1991, the court entered its Opinion and Order denying the Companies' motion, but granting LFUCG and the State's motions. The court ordered LFUCG to pay the costs of the connection onto the comprehensive sewer system, but declined to award compensation to the Companies by LFUCG for the alleged taking of their property. From that order, the Companies now appeal and LFUCG cross-appeals.

Appellants' main argument is that the requirement that they connect onto LFUCG's comprehensive sewer system constituted a taking for which just compensation must be paid. Sections 13 and 242 of the Kentucky Constitution and the 5th and 14th Amendments to the U.S. Constitution prohibit the taking of private property for public use without just compensation to the owner. Also, KRS 65.115, enacted in 1986, provides the following:

(1) The provisions of any other law, rule, or regulation notwithstanding, if any city, county, public body corporate or politic or special district or subdistrict, other than an urban county, furnishes, or proposes to furnish, sewage treatment utility services to customers of another sewage treatment utility by means of all or any part of the installations owned or paid for by such other sewage treatment utility, then such city, county, public body, district of subdistrict taking over or proposing to take over the customers, shall pay just compensation for such installations prior to the time the customers are taken over. If an agreement for compensation is not reached, then just compensation for the installations shall be payable by said city, county, public body, district or subdistrict after condemnation as provided for in the Eminent Domain Act of Kentucky.

(2) There is hereby granted to any city, county, public body corporate or politic or special district or subdistrict, the power of eminent domain with respect to sewage treatment plants, facilities and installations owned by sewage treatment utilities. Such power of eminent domain shall be exercisable in the manner prescribed by the Eminent Domain Act of Kentucky.

(3) Any city, county, public body corporate or politic or special district or subdistrict shall be entitled to surcharge customers so as to recover the amount of compensation paid for installations acquired under this section by agreement of condemnation.

■ Appellants argue, however, that KRS 65.115 is unconstitutional as special legislation in that urban county governments (LFUCG) are the only governmental units excluded. Section 59[29] of our Kentucky

Constitution prohibits special legislation and Section 60 prohibits indirectly doing what can't be done directly by exempting from the operation of a general act, any town, city, county, etc. The standard to which all legislation must conform to avoid unconstitutionality under these sections is that the legislation must (i) apply equally to all in a class; and, (ii) there must be distinctive and natural reasons inducing and supporting the classification. *Kling v. Geary*, Ky., 667 S.W.2d 379 (1984); *Harlan County v. Brock*, 246 Ky. 372, 55 S.W.2d 49 (1932). The reasons must be substantial. *Walters v. Bindner*, Ky., 435 S.W.2d 464 (1968); *Community Hosp. v. Barren County Fiscal Court*, 244 Ky. 672, 52 S.W.2d 896 (1932). This legislation excludes urban county governments (Lexington is the only such government in Kentucky), and deprives only the LFUCG of the power of eminent domain all other cities, counties, special districts, etc. enjoy in situations such as this. Reviewing KRS 65.115 in light of these standards, we find that KRS 65.115 is unconstitutional as special legislation in violation of Sections 59 and 60 of our present Kentucky Constitution.

As we have ruled KRS 65.115 is special legislation and does not apply here, the question then becomes, has there been a taking? This is determined by the facts in each particular case. *Louisville & Jefferson County Metropolitan Sewer District v. Tarrytowne Sanitation Co.*, Ky.App., 818 S.W.2d 267 (1991).

■ As to the loss of its customers and the right to provide them with sewage services, it has been held that a sewage company has no more exclusive right to its customers then would any other seller of services to the public. *Louisville & Jefferson County Metropolitan Sewer Dist. v. Douglass Hills Sanitation Facility*, Ky., 592 S.W.2d 142 (1979). As private sewage facilities, they have no reasonable expectation of continuing indefinitely to sell sewer services to certain customers. *Calvert Investments, Inc. v. Louisville and Jefferson County Metropolitan Sewer Dist.*, 847 F.2d 304 (6th Cir.1988). The Companies are privileged to sell sewer services only as their permits from the State allow, and the State was well within its au-

thority here in denying the Companies' permits. In fact, the Companies did not appeal the denial of their permits.

■ With regard to what was physically taken by requiring connection onto the comprehensive sewer system, it is undisputed that LFUCG has not physically occupied the treatment plants or the land on which they are situated. As to the sewer mains, the greatest interest the Companies could have would be only bare legal title to the mains subject to the free and unrestricted easement of the lot owners. *Douglass Hills Sanitation Facility, supra.*

Our Court addressed this very issue of whether just compensation is due when a private sewage company was required to connect onto a public comprehensive system in *Louisville & Jefferson County Metropolitan Sewer District v. Tarrytowne Sanitation Co.,* Ky.App., 818 S.W.2d 267 (1991). The Court held that under KRS 65.115 and Sections 13 and 242 of the Kentucky Constitution, just compensation must be paid for what was actually taken. However, in *Tarrytowne, supra,* the Court did not have adequate information to determine what was actually taken and, thus, the Court remanded the case for a determination of the extent of the taking. The Court stated:

> There are several relevant questions. Is the acquisition merely the dedicated public easements containing sewer lines which have been fully paid for by the abutting and using property owners? Is the acquisition an established utility and profitable business? Or, is it something in between? Who owns the easements, if anyone? Who will provide the access to the existing easements, if access is necessary? We do not have all of the answers or even all of the questions. *Id.* at 268.

In the case at hand, however, we do have the questions and the answers. Unlike the facts in *Tarrytowne, supra,* there is no issue of fact as to the property interest of the private sewage company. The undisputed evidence indicates that the Companies do not even have bare legal title to the sewer mains. In the deposition of Osborne, the owner of the Companies, he stated that the developers paid to have the sewer lines installed as well as a tap fee, and that they passed on the cost to the lot owners. Unlike the situation in *Douglass Hills, supra,* the developer in the present case never conveyed his interest in the lines of the sewage company.

The Companies also argue that LFUCG was obligated by contract to compensate them for taking over its sewage system. Apparently, the Companies maintain that the language and terms of the grant from EPA to LFUCG constitute a contract of which the Companies are a third-party beneficiary. The provisions to which they refer are the requirements that LFUCG acquire the property of the Companies and abide by the Uniform Relocation Assistance and Real Property Acquisition Policies Act in so doing. This issue was already addressed in the Federal District Court wherein it was held that the terms of the grant did not constitute a contract because the EPA's authority to enforce the terms of the grants is entirely discretionary. Nevertheless, even if LFUCG was contractually obligated to compensate the Companies, as we have already concluded, no property interest of the Companies was taken by LFUCG.

■ The Companies next argue that the trial court erred in remanding the case to the state for administrative hearings on civil penalties. This issue was not listed in appellants' prehearing statement. Accordingly, it is precluded from our review. CR 76.03; *Karam v. Greentree Corp.,* Ky.App., 783 S.W.2d 78 (1990); *Howard v. Magoffin County,* Ky.App., 734 S.W.2d 499 (1987).

■ The remaining issue for our review is appellee/cross-appellants' argument that the trial court erred in ordering LFUCG to pay the expense of connection onto its comprehensive system. LFUCG bases this argument on the allegation that the Companies' permits required them to pay for the connection, which was not the case. The permits merely required the Companies to abandon their sewer systems and connect onto the comprehensive system. No mention is made in the permits as to who should pay for the connection. Under principles of equity, we cannot say the trial court erred in requiring LFUCG to pay the costs of the connection.

For the reasons stated above, the judgment of the Fayette Circuit Court is affirmed.

All concur.